Eugene R. DUFIELD

v.

Everett I. PERRIN, Warden New Hampshire State Prison and Thomas D. Rath, Attorney General for the State of New Hampshire.

Civ. A. No. 79–67.

United States District Court,
D. New Hampshire.

May 21, 1979.

688

S. David Siff, Concord, N. H., for petitioner.

Office of the Attorney General, for respondents.

## ORDER

LOUGHLIN, District Judge.

Petitioner has filed a Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 alleging that certain errors of constitutional magnitude occurred during his trial.

The record supports a finding that petitioner has exhausted the remedies available in the Courts of New Hampshire. Therefore, this court shall entertain petitioner's application for writ of habeas corpus in reference to his claim of a deprivation of his sixth amendment right to a speedy trial.

The facts of the pending petition may be summarized as follows: petitioner was arrested on January 4, 1975 for the offense of armed robbery which occurred on August 30, 1974. During the September 1975 term of the Hillsborough County Grand Jury, an indictment was issued against the petitioner for the offense.

During the first week of January, 1976, the Hillsborough Public Defender was appointed petitioner's counsel and trial was set for February 9, 1976 in the Hillsborough County Superior Court. On January 23, 1976, the public defender motioned to withdraw conditioned upon petitioner retaining private counsel. On February 9, 1976 a Motion to Continue and a Motion to Consolidate were filed by petitioner. Both being granted, the Hillsborough County indictment was transferred and consolidated with seven pending Merrimack County indictments. The admitted purpose for this consolidation was to facilitate plea negotiations initiated by retained counsel.

In regards to the seven pending Merrimack indictments, petitioner's retained counsel had filed a Petition for Early Trial and Petition for Bail on May 2, 1975.

Plea negotiations broke down and the pending Merrimack and Hillsborough indictments were not disposed of either by

trial or plea. In May of 1976, petitioner was tried in Merrimack County on a Rockingham County indictment, found guilty and sentenced to a term of not more than three years nor less than one at the state prison. Petitioner was sentenced on May 12 and paroled in December of the same year to the custody of Armel J. Couture, an assistant parole officer. From that time until the trial date, March 9, 1978, he was at liberty residing in the Manchester, Keene or Claremont areas. Petitioner, during this period, was not represented by counsel.

In January of 1978, petitioner's present counsel was assigned by the Merrimack County Clerk's office to represent petitioner on the outstanding Merrimack and Hillsborough indictments which had lay dormant since early 1976. On Petition to Dismiss for lack of speedy trial, the Merrimack indictments were dismissed and the Hillsborough County indictment was transferred to the Hillsborough County Superior Court on February 6, 1978. On February 8, 1978, petitioner moved to dismiss the Hillsborough indictment for lack of speedy trial. That motion was denied on March 3, 1978 and a Motion for Rehearing was denied on March 6, 1978. Petitioner was found guilty by a jury on the Hillsborough County armed robbery indictment on March 14, 1978 and was sentenced to the state prison for a maximum of seven years and a minimum of three.

Petitioner appealed to the New Hampshire Supreme Court taking exception to the lower court's refusal to dismiss the indictment, alleging a violation of petitioner's sixth amendment right to a speedy trial and violations of petitioner's right to due process of law.

In a four to one decision, the New Hampshire Supreme Court overruled petitioner's exceptions and upheld the conviction. *State v. Dufield,* 119 N.H. ——, 398 A.2d 818 (1979). Petitioner motioned for a rehearing and on February 7, 1979 such was denied with one judge dissenting.

The United States Supreme Court in considering the sixth amendment right to a speedy trial refused to adopt an inflexible standard to review claims such as this petitioner's, rather the Court mandated the use of an ad hoc balancing test. Criteria to be considered were the length of delay, the reason for the delay, the accused's assertion of his right and the prejudice to the accused resulting from the delay along with other relevant circumstances. *Barker v. Wingo,* 407 U.S. 514, 530, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972). This balancing test weighs the conduct of the prosecution and the petitioner. Id.

This court shall proceed to apply this analysis to determine whether petitioner's sixth amendment rights have been abridged necessitating his immediate release.

" 'The length of the delay is to some extent a triggering mechanism. Until there is some delay which is presumptively prejudicial, there is no necessity of inquiring into other factors that go into the balance.' " Id., *U. S. v. Johnson,* 579 F.2d 122, 123 (1st Cir. 1978). The thirty-eight month delay from arrest or the thirty month delay from indictment to trial is to be considered inordinate in length triggering inquiry as to the reasons for delay. See *U. S. v. Johnson,* 579 F.2d at 123, eight months delay; *U. S. v. Diaz,* 535 F.2d 130, 132 (1st Cir. 1976) fourteen month delay; *U. S. v. Fay,* 505 F.2d 1037, 1039 (1st Cir. 1974) nine month delay; and *U. S. v. Churchill,* 483 F.2d 268, 273 (1st Cir. 1973) 26 month delay. The presence of over a three year delay must be considered presumptively prejudicial to petitioner.

Given that the length of delay is sufficient to act as a trigger, the reason for this delay must be addressed. The New Hampshire Supreme Court determined that petitioner temporarily waived his right to a speedy trial by filing a Motion to Continue on February 9, 1976 to allow for the consolidation of this indictment with others pending in Merrimack County. *State v. Dufield,* 398 A.2d at 819. This court agrees with the New Hampshire Supreme Court that petitioner was responsible for the delay occasioned by this motion yet the period attributable to him can only be that time period

prior to consolidation. This court cannot lose sight of the fact that it was the judicial system and the prosecutors that allowed this and seven other indictments to go unattended. The primary burden to assure that criminal cases are expeditiously brought to trial is with the courts and the prosecutor. *Barker v. Wingo,* 407 U.S. at 529, 92 S.Ct. 2182, not the accused who has no duty to bring himself to trial, id., *Dickey v. Florida,* 398 U.S. 30, 37–38, 90 S.Ct. 1564, 26 L.Ed.2d 26.

■ Petitioner provided no evidence which would indicate that the county attorney acted in any improper manner in bringing this indictment to trial. The State suggested in argument that the primary fact for the delay lay with the crowded docket and the presence of only one justice in Merrimack County. Accepting this does not justify nor excuse the two year delay. Crowded criminal dockets and the lack of judges cannot be attributed to petitioner. These stated reasons weigh against the state, but are considered more "neutral" than deliberate government delay. *Barker v. Wingo,* 407 U.S. at 531, 92 S.Ct. 2182; *U. S. v. Johnson,* 579 F.2d at 124; *U. S. v. Cabral,* 475 F.2d 715, 718 (1st Cir. 1973).

The third criteria to consider regards petitioner's obligation to assert his right to a speedy trial. As stated previously, petitioner temporarily waived his right to such for the purpose of consolidation. Upon consolidation, the petitioner's right to a speedy trial began anew. .

■ Failure to assert the right to a speedy trial does not constitute a waiver of the right *Barker v. Wingo,* 407 U.S. at 528, 92 S.Ct. 2182. However, the court also stated:

"The defendant's assertion of his speedy trial right . . . is entitled to strong evidentiary weight in determining whether the defendant is being deprived of the right. We emphasize that failure to assert the right will make it difficult for a defendant to prove that he was denied a speedy trial". *Id.* at 531–532, 92 S.Ct. at 2192–2193.

■ The New Hampshire Supreme Court found that the May 2, 1975 Petition for Early Trial and Bail filed in Merrimack County prior to consolidation had no bearing on the Hillsborough indictment. *State v. Dufield,* 398 A.2d at 819. However, this Petition for Early Trial requested by retained counsel applied to the seven indictments to which the Hillsborough indictment in question attached. As of the date of consolidation, if the speedy trial petition did not apply to the Hillsborough County indictment, it certainly put the State and court on notice. See *Strunk v. U. S.,* 412 U.S. 434, 93 S.Ct. 2260, 37 L.Ed.2d 56 (1973) wherein the petitioner had stated to an F.B.I. agent while incarcerated that he intended to demand a speedy trial. No speedy trial motion was filed and the government deemed this initial assertion as justification for the delay. The Supreme Court held the government was:

"plainly placed . . . on notice that the speedy trial issue was being preserved by the accused and would be pressed . . . ."

Id. at 436, 93 S.Ct. at 2262, *Prince v. State of Alabama,* 507 F.2d 693, 702 (5th Cir. 1975). The right to speedy trial is not dependent on repeated defense assertions *Barker v. Wingo,* 407 U.S. at 529, 92 S.Ct. 2182; *U. S. v. Johnson,* 579 F.2d at 124.

■ Whether this May, 1975 petition was sufficient to put the State "on notice" is a question unanswered. A more troublesome issue presented is whether petitioner was ever apprised of his right to a speedy trial during the two year delay. Different weight attaches to a situation in which a petitioner knowingly sleeps on his right from a situation in which his attorney acquiesces in long delay without advising his client of the ramifications or from a situation in which no counsel is appointed. *Barker v. Wingo,* 407 U.S. at 514, 92 S.Ct. 2182. Consider *U. S. v. Butler,* 426 F.2d 1275, 1278 (1st Cir. 1970) a pre-*Barker* decision.

■ After May, 1976 petitioner was left to fend for his own legal rights. During

the two following years, no motions, requests or petitions demanding trial were forthcoming yet petitioner was without counsel. Not until counsel was appointed in January of 1978 was the motion to dismiss for lack of a speedy trial filed. This court will not deal in speculation as to the reasons why for two years petitioner remained silent nor will it deprive petitioner under these circumstances his fundamental right by finding a waiver present. Little weight is attached to his failure to assert his rights under the circumstances. Id.

██ In considering the final criterion, it is proper to say that the right to speedy trial is designed to protect against two distinct types of prejudice—prejudice to the person and prejudice to the defense. *Barker v. Wingo,* 407 U.S. 514 at 532, 92 S.Ct. 2182 at 2193 identified the purpose of this right is:

"to prevent oppressive pretrial incarceration, to minimize anxiety and concern of the accused and, to limit the possibility that the defense will be impaired."

The Supreme Court in *Moore v. Arizona,* 414 U.S. 25, 27, 94 S.Ct. 188, 38 L.Ed.2d 183 (1974) in citing Justice White's concurring opinion in *Barker* enlarged upon the possible prejudice to the person stating that inordinate delay:

"wholly aside from possible prejudice to the defense on the merits, may 'seriously interfere with the defendant's liberty, whether he is free on bail or not, and . . . may disrupt his employment, drain his financial resources, curtail his associations, subject him to public obloquy and create anxiety in him, his family and his friends' ".

It is well recognized that courts cannot overlook the possible impact pending charges might have on an incarcerated petitioner's prospects for parole and meaningful rehabilitation. Id. Prejudice also results from the loss of the possibility of receiving a sentence at least partially concurrent with the one being served. *Smith v. Hooey,* 393 U.S. 374, 378, 89 S.Ct. 575, 21 L.Ed.2d 607 (1969).

██ With this backdrop in mind, this court finds that prejudice was well documented in the record and need not speculate as to its presence. Petitioner was paroled in December of 1976 and remained at large in the community for fourteen months until the March 19th trial. During this period, petitioner held a job, reentered the community and began to readjust. Petitioner's parole officer during the sentencing hearing stated that petitioner's behavior had been excellent and that he had cooperated with the parole officer 100% and was in the process of rehabilitating himself (sentencing transcript, page 7). The anxiety and concern felt here cannot be overlooked. The prejudice that his petitioner may endure may well be more than that occasioned by the model citizen in that while most may not be in need of rehabilitation under the circumstances ˙present, petitioner was, and had reacted properly to parole; incarceration can only have a detrimental effect. *Moore v. Arizona,* 414 U.S. at 27, 94 S.Ct. 188; *U. S. v. Judge,* 425 F.Supp. 499, 505 (D.Mass.1976).

Loss of the possibility of serving concurrent time on the Rockingham conviction and the present one is to be weighted. Petitioner was initially sentenced in May, 1976 to a term of not more than three years nor less than one at the State Prison and served seven months prior to parole. If petitioner had received a speedy trial on the Hillsborough indictment, a concurrent sentence might have been appropriate. There is no definite answer as to the time lost nor the anxiety felt, but such cannot be overlooked. *Smith v. Hooey,* 393 U.S. at 378, 89 S.Ct. 575; *U. S. v. Cabral,* 475 F.2d at 719.

Actual prejudice to the defense is apparent from the transcript in that the memories of prosecution witnesses had diminished significantly. The State's star witness, the alleged accomplice, who was serving time for twenty-eight other indictments, failed to remember the date of the offense, failed to remember the amount of money taken and failed to remember who initially obtained the pocketbook. The victim could not accurately testify as to the date the

robbery took place nor could she testify as to the amount of money stolen. Contradictory testimony was presented regarding the length of time the petitioner held the weapon on the victim, what the assailants wore and as to the length of time the robbery took.

At first blush, these flaws seem to aid the defense, yet petitioner was convicted and was convicted on failing memories. Whether exculpatory evidence was lost cannot be determined since the:

> "[l]oss of memory . . . is not always reflected in the record because what has been forgotten can rarely be shown." *Barker v. Wingo*, 407 U.S. 514 at 532, 92 S.Ct. 2182 at 2193.

The delay from January 4, 1975, the date of arrest to March 19, 1978, the date of trial is unreasonable, petitioner's actions in motioning for a continuance affected this delay only temporarily and such did not constitute a waiver for the entire period. The delay was primarily occasioned by the crowded Merrimack court docket and the presence of only one justice, a factor weighed against the State. The court finds that the State was on notice pursuant to the May 1975 Motion for Early Hearing; that petitioner was preserving his right to a speedy trial in general and that the record presents a question as to whether petitioner was aware of such a right or whether such had to be exerted during his incarceration and parole. Petitioner was actually prejudiced by the delay in the presentation of his defense and personally while incarcerated and at large.

█ The balance weighs against the State. The petitioner was denied his sixth amendment right to a speedy trial. The remedy must be his immediate release from State custody. This court need not address the due process issues raised by the petitioner.

I direct that a writ of habeas corpus issue forthwith directing State officials to release Eugene Dufield.

SO ORDERED.