Daniel P. ISAAC, Petitioner, Appellant,

v.

Everett I. PERRIN, et al., Respondents,
Appellees.

No. 81–1154.

United States Court of Appeals,
First Circuit.

Submitted Sept. 18, 1981.

Decided Sept. 25, 1981.

Eleanor Krasnow, Manchester, N. H., on brief for petitioner, appellant.

Gregory H. Smith, Atty. Gen., and Paul W. Hodes, Asst. Atty. Gen., Crim. Justice Div., Concord, N. H., on brief for respondents, appellees.

Before COFFIN, Chief Judge, CAMPBELL and BREYER, Circuit Judges.

COFFIN, Chief Judge.

Appellant appeals the federal district court's denial of his petition for habeas corpus relief pursuant to 28 U.S.C. § 2254 on the grounds that his constitutional right to a speedy trial was violated. Appellant was arrested on August 19, 1977, and arraigned in a New Hampshire state district court under N.H. RSA 632–A:2 for aggravated felonious sexual assault. Unable to

meet bail, he was confined in the Hillsborough County Jail. Appearing with his court-appointed attorney on September 14, 1977, appellant waived his probable cause hearing and his case was turned over to the state superior court pursuant to the state's two-tiered criminal system. *See* N.H. RSA 596–A:7. A grand jury indictment was returned on October 4, and his arraignment was scheduled for November 2 in superior court. On that date, his attorney failed to appear and the court appointed a public defender to represent appellant. The public defender protested that his already heavy caseload would preclude him from trying appellant's case until the January 1978 term. The case was accordingly scheduled for February 15, 1978. Bail was continued, and appellant remained incarcerated in county jail.

The prosecutor was advised by letter of January 24, 1978, that the complaining witness, a nine year old girl residing in Indiana, was not yet emotionally prepared to testify in court. The child's psychologist recommended deposition testimony instead. The prosecutor sought a motion for a videotape deposition but this request was denied by a New Hampshire court. He then attempted to procure the girl's testimony pursuant to the Uniform Act to secure attendance of witnesses outside the state in criminal proceedings. N.H. RSA Chap. 613. An Indiana court denied this request and decided that the girl would not be available, pending psychiatric treatment, for three more months. The prosecutor accordingly sought a continuance in New Hampshire superior court on February 15, and appellant objected on speedy trial grounds. A hearing was held the same day, and the court granted a continuance until May 22,

1978. Bail was reduced to $500 but appellant was unable to meet this amount.

In early May, however, the court realized that a jury would not be available on May 22, and so notified appellant who suggested that the trial be moved forward to the week of May 9 when a jury was available. The trial was instead rescheduled for June 19, 1978. Appellant then moved to dismiss the case on speedy trial grounds; a hearing on that motion was held on June 2, and the court ruled that the motion would be granted if the trial was not held on June 19. The trial was held as scheduled, and appellant was found guilty, leading to his present incarceration in New Hampshire State Prison. After an unsuccessful appeal to the New Hampshire Supreme Court, appellant acquired new counsel and filed the present habeas corpus petition in federal court.

Appellant makes two arguments on appeal. First, he reasserts the claim made to the district court below and to the state courts that his Sixth Amendment right to a speedy trial was denied. Second, he alleges that the district court erred in denying his motion for a federal evidentiary hearing. Appellant argues strenuously that because the material facts were not adequately developed at the state court hearings, *Townsend v. Sain*, 372 U.S. 293, 83 S.Ct. 745, 9 L.Ed.2d 770 (1963), required the district court to hold a hearing to resolve the disputed factual issues. We hold that even if appellant's allegations with respect to the disputed material issues[1] are assumed to be true, his right to a speedy trial was not violated. An evidentiary hearing is therefore unnecessary. *See, e. g., Jones v. Morris*, 590 F.2d 684, 687 (7th Cir.), *cert. denied*, 440 U.S. 965, 99 S.Ct. 1513, 59 L.Ed.2d 780 (1979); *Spinkellink v. Wain-*

---

1. In arguing that the district court erred by refusing to hold an evidentiary hearing, appellant emphasized a number of factual issues with respect to which no findings had been made at the state court level. Upon close examination, however, the record disclosed that a number of these issues were not actually disputed. As to these, an evidentiary hearing was obviously unnecessary. *See, e. g., Townsend v. Sain*, 372 U.S. 293, 312–13, 83 S.Ct. 745, 756–57, 9 L.Ed.2d 770 (1963); *Parton v. Wyrick*, 614 F.2d 154, 158 (8th Cir.), *cert. denied*, 449 U.S. 846, 101 S.Ct. 131, 66 L.Ed.2d 56 (1980). Other factual issues were not raised at all in the state court, such as the alleged conditions of the prison; we are precluded from considering these since the state courts have not had the opportunity to address them. *Domaingue v. Butterworth*, 641 F.2d 8, 12–13 (1st Cir. 1981). We have resolved the remaining factual disputes in appellant's favor.

*wright,* 578 F.2d 582, 590 (5th Cir. 1978), *cert. denied,* 440 U.S. 976, 99 S.Ct. 1548, 59 L.Ed.2d 796 (1979); *Morris v. Wyrick,* 516 F.2d 1387, 1392 (8th Cir.), *cert. denied,* 423 U.S. 925, 96 S.Ct. 268, 46 L.Ed.2d 251 (1975).

■ The Supreme Court has established a four-part balancing test to determine whether a defendant's constitutional right to a speedy trial has been violated. *See Barker v. Wingo,* 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972). The four factors are the length of the delay, the reasons for the delay, the nature of the defendant's assertion of his right to a speedy trial, and the prejudice caused to the defendant as a result of the delay. *Id.* at 530; *see United States v. Johnson,* 579 F.2d 122 (1st Cir. 1978).

■ "The length of the delay is to some extent a triggering mechanism." *Barker, supra,* 407 U.S. at 530, 92 S.Ct. at 2192. Given the relatively simple nature of the charge against appellant, the ten month delay between arraignment and trial is enough to warrant further inquiry into appellant's claim. *See United States v. Johnson, supra* (eight month delay); *United States v. Fay,* 505 F.2d 1037 (1st Cir. 1974) (nine month delay).

■ Different weights are assigned to different reasons for delay. Intentional delay by the prosecution in order to hamper the defense is weighted heavily against the government. More neutral reasons for delay, such as negligence or overcrowded courts, are counted against the government, since the ultimate responsibility for bringing the case to trial rests there, but are weighted less heavily. Finally, delays serving legitimate purposes, such as obtaining a missing witness, are not to be held against the government. *Barker, supra,* 407 U.S. at 514, 92 S.Ct. at 2184; *Johnson, supra,* 579 F.2d at 123–24.

The ten month lapse of the time between appellant's arraignment and trial can be divided into four periods. Appellant does not complain about the time between August 19, 1977, when he was first arraigned in state district court, and November 2, 1977, when he was arraigned in state superior court. This is presumably not an unusual length of time for a grand jury indictment and arraignment for a felony charge. Appellant apparently concedes that it is not a "delay" at all, and therefore this time lapse does not count against the government.

■ Appellant argues that the 3½ month period between the superior court arraignment and the first scheduled trial date should be weighted heavily against the state. The reason for the delay was that new counsel was appointed for appellant on November 2, when his prior attorney failed to appear at the arraignment. Under New Hampshire's two-tiered criminal system, counsel assigned in district court often does not follow his client to superior court. Appellant argues that since the state intentionally established this system, and since the system often causes delays for defendants unable to retain private counsel, the delay caused in this case should be weighted heavily against the state.[2] We are not convinced by this argument. The state undoubtedly had many objectives in establishing its criminal justice system, and we are unwilling to attribute to it a deliberate effort to delay trials. The delays caused by the two-tiered system are similar to those caused by overcrowded courts: while both could be cured by a reorganization of the judicial system or by the infusion of additional funding, each is a "neutral" reason for delay which counts against the state,

2. Appellant also argues that since the two-tiered system results in the appointment of new counsel for the poor on a class-wide basis, we should assess heavy weight to the resulting delays under the doctrine that laws discriminating against the poor are subject to strict judicial scrutiny. The Supreme Court has, of course, never accepted such a doctrine. *See, e. g., San Antonio Independent School District v.*

*Rodriguez,* 411 U.S. 1, 93 S.Ct. 1278, 36 L.Ed.2d 16 (1973). To the extent that appellant is making a claim that the New Hampshire law violates the equal protection clause, we are precluded from considering it since the issue has not been addressed to the state courts. *Picard v. Connor,* 404 U.S. 270, 92 S.Ct. 509, 30 L.Ed.2d 438 (1971); *Turner v. Fair,* 617 F.2d 7, 11 (1st Cir. 1980).

but less heavily than intentional delay. *Barker, supra,* 407 U.S. at 531, 92 S.Ct. at 2192.

■ The state superior court ordered a continuance from February 15, 1978, the first scheduled trial date, to May 22, 1978, because of the unavailability of the prosecution's complaining witness. The prosecutor was informed by the girl's psychologist that she was emotionally unprepared to face cross-examination at the time. Upon learning of this problem, the prosecutor attempted to elicit her testimony via videotape deposition, and also sought a subpoena to compel her attendance in New Hampshire court. When both efforts were unsuccessful, he moved for a continuance in accordance with an Indiana court's recommendation that a three month delay was necessary. This motion was granted over a speedy trial objection by appellant. We are unable to fault the government for this delay. While it is undisputed that the prosecutor made no effort to prepare the witness emotionally for trial prior to the letter of January 24 from the child's psychologist, we are unwilling to impose this kind of burden on the state. Moreover, in spite of appellant's exhortation that the prosecutor should have taken additional "practical steps" to secure the child's testimony, he fails to make any concrete suggestions, and we can think of none. Like the case of a "missing witness", *Barker, supra,* 407 U.S. at 531, 92 S.Ct. at 2192, the psychological unpreparedness of a nine year old victim of a sexual assault justifies appropriate delay here. *Cf. Gelfand v. People,* 196 Colo. 487, 586 P.2d 1331, 1333 & n.1 (1978) (*en banc*) (hospitalization of chief witness who was too ill to bear stress of testifying justifies continuance).

■ The final delay, from May 22, 1978 to the actual trial date of June 19, was ordered when the state court realized that May 22 was during a week of non-jury trials and no juries would be available. While appellant requested that the trial be moved ahead to May 9 instead of pushed back, this request was apparently denied without a hearing and the continuance ordered. Appellant does not claim that this delay was intended to hamper his defense or that heavy weight should be attached to it. This final delay must therefore be counted against the government, though not heavily, since it was apparently caused by negligence or the exigencies of judicial administration. *See Barker, supra,* 407 U.S. at 531, 92 S.Ct. at 2192.

Of the ten month period between arraignment and trial, 5½ months are justified and do not count against either side. Four and a half months count against the government, but not heavily.

The third factor to be considered is the extent to which the defendant asserted his right to a speedy trial. It is undisputed that he requested an immediate trial in February, which demonstrates his willingness to go to trial. He asserted his right to a speedy trial twice during May, 1978, and moved to dismiss the charges on that ground. Appellant also claims that when his newly appointed counsel protested that his heavy caseload would preclude a trial until the January term, this was in effect an assertion of appellant's right to a speedy trial. While this argument appears dubious even if the facts are as alleged by appellant, we are willing to assume *arguendo* that appellant asserted his speedy trial right at that time. Since appellant asserted his right to a speedy trial often and vigorously, this factor weighs in his favor.

The final factor is the prejudice caused to the defendant as a result of the delay. The Supreme Court has identified three kinds of interests that must be considered: "(i) to prevent oppressive pretrial incarceration; (ii) to minimize anxiety and concern of the accused; (iii) to limit the possibility that the defense will be impaired." *Barker, supra,* 407 U.S. at 532, 92 S.Ct. at 2193. The most serious interest, of course, is that delay not impair the defense and thereby undermine the fairness of the entire system. *Id.*

■ Appellant argues that he was prejudiced in each of the ways noted above. He has claimed both in state and federal court that his pretrial incarceration was particularly oppressive since he was an ac-

cused sexual offender and was therefore segregated and looked down upon by fellow inmates. In federal court, he has broadened this claim and alleged that the prison conditions were deplorable and degrading in many respects. However, this court recently held in *Domaingue v. Butterworth*, 641 F.2d 8, 12–13 (1st Cir. 1981), that the exhaustion requirement of 28 U.S.C. § 2254(b)–(c) is not satisfied if a petitioner presents "new factual allegations in federal court that transform his claim or cast it in a significantly different light" from the state court claim. Moreover, in light of the fact that appellant was ultimately convicted of sexual assault and his time spent in pretrial incarceration was subtracted from the sentence imposed at trial, we are unable to see how appellant was significantly prejudiced by his pretrial incarceration even if the conditions were as bad as he claims.[3]

Appellant also alleges that he suffered particular anxiety and concern by the delay since a Massachusetts detainer on an unrelated charge was pending during the time of pretrial incarceration and could not be executed until after his New Hampshire trial. Every delay in the New Hampshire case therefore also delayed the Massachusetts detainer. Given the relatively short length of the delay involved, however, we do not consider appellant's increased anxiety to be a major factor in the balancing process.

The most vigorous argument on appeal is that appellant's defense was impaired because the ten month delay caused the memories of crucial prosecution witnesses to lapse, thereby undermining appellant's alibi defense. The record shows that while the victim's mother told police immediately after the assault that the assailant wore "horn rimmed" glasses, she testified a few days before the trial that the assailant did not wear glasses, and when asked at trial she replied that she did not recall whether the assailant wore glasses. Appellant claims that this memory loss is crucial, since his witness testified that he always wore "wire framed" glasses.[4]

The Supreme Court in *Barker, supra*, 407 U.S. at 532, 92 S.Ct. at 2193, noted that prejudice can result "if defense witnesses are unable to recall accurately events of the distant past" and that loss of memory "is not always reflected in the record because what has been forgotten can rarely be shown." But the delay in *Barker* was over five years, compared to ten months here; ten months hardly qualifies as the "distant past". Moreover, while memory lapses by *prosecution* witnesses may under some circumstances prejudice the defense, such as where memory loss is egregious and the defendant is "convicted on failing memories", *Dufield v. Perrin*, 470 F.Supp. 687, 692 (D.N.H.1979), the memory lapse alleged here is relatively minor. In *Dufield*, the length of delay was over three years, and the state's key witness was unable to recall basic aspects of the alleged crime. Here, memory lapse was restricted to the question of whether the assailant wore glasses; and this memory loss *is* "reflected in the record" since the jury was aware that the victim's mother had earlier told police that the assailant wore horn rimmed glasses. Furthermore, the child's testimony was that the assailant did not wear glasses; appellant does not allege that *she* had forgotten this important fact. Appellant therefore had sufficient opportunity to exploit the memory lapses in closing argument, and did so. Finally, where the delay between arrest and trial is only ten months, we are unwilling to say that appellant has been significantly prejudiced by

---

3. Appellant does not argue that his Eighth Amendment right to be free from "cruel and unusual punishment" was violated. *See generally Bell v. Wolfish*, 441 U.S. 520, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979).

4. Appellant also alleges that the young girl was unable to recall the precise time that the assault took place, and that his alibi defense was thereby undermined. The record shows that while she was not certain when the incident occurred, she was able to estimate that it happened between 11:15 A.M. and noon. Moreover, her uncertainty appeared to be caused less by memory loss than by the fact that she *never* knew exactly when the assault took place. Since appellant's alibi was that he was with a friend from 10:15 A.M. to 4:00 P.M., we are unable to see how this claim of prejudice has any merit.

undisclosed memory loss which does not appear in the record.[5]

Upon balancing the four factors, we conclude that appellant's right to a speedy trial was not violated. While none of the factors is "a necessary or sufficient condition" to finding a constitutional violation, *Barker, supra*, 407 U.S. at 533, 92 S.Ct. at 2193, we find it significant that appellant has failed to demonstrate substantial prejudice from the delay. Moreover, the length of the delay is not very great, particularly since 5½ months of the delay was justified and is not weighed against the government. While appellant asserted his rights vigorously and often, this alone is clearly insufficient to conclude that his rights have been violated.

*The judgment of the district court is affirmed.*

---

**5.** In *United States v. Butler*, 426 F.2d 1275 (1st Cir. 1970), we stated that "where the result turned on eyewitness identifications which necessarily become less reliable with the passage of time, we think a delay of nine months is overly long absent a legitimate reason therefor." *Id.* at 1277. Here, we have found that much of the ten month delay *was* justified. Moreover, in *Butler* nine months passed between indictment and arraignment; the delay until trial must have been even greater. Final-

ly, *Butler* was decided prior to *Barker v. Wingo, supra*, and thus its premise that "delays must serve some legitimate purpose", *Butler, supra*, 426 F.2d at 1277, is of doubtful validity. We therefore find *Butler* distinguishable from the present case.

*United States v. Fay*, 505 F.2d 1037 (1st Cir. 1974), is also clearly distinguishable since in that case a crucial defense witness could not be located after a nine month delay.