**UNITED STATES of America, Plaintiff,**

v.

**Gloria YANCY and Robert Yancy, Defendants.**

**No. 75 CR 809.**

United States District Court, N.D. Illinois, E.D.

May 21, 1987.

Anton R. Valukas, U.S. Atty. by Alex Vesselinovitch, Asst. U.S. Atty., Chicago, Ill., on behalf of the plaintiff.

Martin S. Agran, Chicago, Ill., on behalf of defendant Gloria Yancy.

D. Ashley Pennington, Chicago, Ill., on behalf of defendant Robert Yancy.

## ORDER

BUA, District Judge.

This order concerns defendants' motion to dismiss for violation of § 3161 of the Speedy Trial Act and the speedy trial provision of the Sixth Amendment. For the reasons stated herein, defendants' motion is granted and the indictment is dismissed with prejudice.

### I. FACTS

On December 16, 1975, defendants were indicted on two counts for distributing cocaine. According to the indictment, defendants allegedly distributed approximately 70 grams of a substance containing a small percentage (3.7%) of cocaine. Prior to this indictment, on June 18, 1975, Drug Enforcement Agency (DEA) officers obtained federal arrest warrants from Magistrate Jurco naming defendants for delivery of cocaine. On June 23, 1975, DEA officers went to the last known residence of defendants to execute the arrest warrants. Upon arrival, the officers were admitted to the residence by a woman who identified herself as the mother of the defendants. The defendants' mother informed the officers that her son and daughter no longer resided at this location and that she made them move out of the house because the police were looking for them. The defendants' mother stated that she would contact the officers if she saw her children again, and the officers left their card with the defendants' mother.

On March 19, 1987, Gloria Yancy was arrested in Chicago, Illinois. On April 9, 1987, defendant Robert Yancy was arrested in Kansas City, Kansas. Both defendants were subsequently arraigned before Magistrate Rosemond and released on bond pending trial. Both defendants have entered pleas of not guilty.

### II. DISCUSSION

#### A. Speedy Trial Act

Defendants' first argument for dismissal is premised on §§ 3161(c) and

3162(a)(2) of the Speedy Trial Act of 1974 (Act). 18 U.S.C. § 3161 *et seq.* Section 3161(c) provides that once a defendant is indicted and enters a plea of not guilty, he is entitled to a trial within seventy days from either the filing of the indictment or the date of the defendants' first appearance before a judicial officer, whichever occurs last. § 18 U.S.C. § 3161(c)(1). Subject to certain permissible periods of delay outlined in § 3161(g), failure to afford a defendant a trial in the calculable seventy-day period is grounds for dismissing the indictment under § 3162(a)(2). However, according to § 3163, the provisions of § 3161(c) are applicable only to indictments filed on or after July 1, 1976 and the sanction provisions in § 3162 are applicable only to indictments filed after July 1, 1980. Here, the indictment was filed prior to the effective date of both provisions of the Act. Thus, the time periods outlined in § 3161(c) sanctions contained in § 3162 do not apply to the facts in this case. *See United States v. Watson,* 623 F.2d 1198, 1202 (7th Cir.1980); *United States v. Grismore,* 564 F.2d 929, 932 (10th Cir.1977).

### B. Sixth Amendment

In *Barker v. Wingo,* 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972), the Supreme Court outlined a four factor balancing test for ascertaining whether a period of delay violates a defendant's Sixth Amendment right to a speedy trial. These factors include length of delay, reason for delay, defendant's assertion of right to a speedy trial, and prejudice to the defendant. *Id.* at 530, 92 S.Ct. at 2191. According to the Court, until the period of delay becomes presumptively prejudicial, inquiry into the remaining balancing factors is not required. *Id.* In the present case, the twelve-year post indictment delay clearly triggers an analysis of the remaining considerations. Although the length of delay is a factor to be considered by the court, the amount of weight accorded to this factor will depend in part on the reason for the delay.

Under the Sixth Amendment, the government has a "constitutional duty to make a diligent good faith effort to locate and ap-prehend a defendant and bring that defendant to trial." *Smith v. Hooey,* 393 U.S. 374, 383, 89 S.Ct. 575, 579, 21 L.Ed.2d 607 (1969); *United States v. Deleon,* 710 F.2d 1218, 1221 (7th Cir.1983). The reason for the delay in the present case appears to be a point of dispute. The government contends defendants purposefully evaded arrest by DEA officers while defendants assert they have lived and worked in the Chicago area until September 1986.

Defendant Gloria Yancy states by affidavit that with the exception of a few months in 1977 and 1986, she has always lived with mother at the residence DEA officers visited on June 23, 1975. Gloria asserts that until her arrest in March 1987, she had no knowledge of the charges pending against her or that police were looking for her. Gloria also states that at no time did she attempt to avoid arrest on charges alleged in the indictment or to secrete herself in any fashion. An affidavit submitted by defendant Robert Yancy contains similar representations with the exception of the fact that he resided in Chicago apart from his mother and sister until he left in September 1986 to take a job with a security systems firm in Missouri. According to Robert, he first learned of the pending charges in April 1987 after having been denied a permit for a firearm which was required for his employment. Similarly, Robert states that at no time during the past twelve years has he avoided arrest or attempted to conceal himself from law enforcement officials.

■ Reviewing the facts recited in the parties' briefs and affidavits, little doubt exists that the reason for the twelve years of delay was neglect. The government's own version of the facts shows that the only attempt made by law enforcement officials to contact defendants was the June 23, 1975 visit to the home of defendants' mother. The alleged response of defendants' mother to the officers' inquiry, although maybe not truthful, was certainly not surprising. The government is not entitled to rely on the representation of a mother that she will "blow the whistle" on her children by informing the government

of their whereabouts. The government simply offers no explanation for the lapse of twelve years between its attempts to locate defendants.

Similarly, the government's bald assertion that defendants were fugitives from the law is completely unsupported. No suggestion is made that defendants concealed themselves or left the jurisdiction to avoid prosecution. Based on the chronology of events, at no time could defendants have known that formal charges were pending against them because the indictment issued months after officers attempted to execute the arrest warrants in June 1975. Defendants' affidavits list specific times and places where they have lived and worked during the past twelve years. The government in its reply brief does not attempt to disprove any of these representations. As such, no basis exists to credit the twelve-year delay to defendants' attempts to avoid prosecution. One attempt in twelve years to locate the defendants simply does not meet the government's duty of diligence.

Although the Court in *Barker* classified neglect as a more neutral consideration in assigning weight under the balancing test, the twelve years of neglect in the present case nonetheless is a consideration strongly favoring defendants' motion to dismiss. Analyzing the length of delay in light of the apparent reason for the delay, little doubt exists that the first two factors outlined in the *Barker* test weigh heavily in favor of defendants' motion. With regard to the third factor, assertion of the right, both sides appear to agree that no weight should be accorded to this consideration. Here, defendants' assertion of their right to a speedy trial came only after the alleged period of improper delay. In similar circumstances, courts have refused to assign any weight to this factor. *See e.g., United States v. Deleon,* 710 F.2d 1218, 1222 (7th Cir.1983); *United States v. Agreda,* 612 F.Supp. 153, 159 (E.D.N.Y.1985). As such, this court turns to the final consideration of prejudice.

In *Barker v. Wingo,* the Supreme Court identified three types of prejudice resulting from delay. First, defendants may endure incarceration during the delay. *Barker v. Wingo,* 407 U.S. at 532, 92 S.Ct. at 2192. Second, defendants may suffer anxiety from knowing they stand accused. *Id.* Third, delay may impair a defendant's ability to defend himself. *Id.* Of the three types of prejudice, the court noted the last was the most serious, "because the inability of a defendant to adequately prepare his case skews the fairness of the entire system."

In the present case, the first two types of prejudice do not exist as defendants were not imprisoned during the delay and were presumably unaware of the charges pending against them. With regard to the third, defendants point to the unavailability of certain currency exchange personnel and an individual named Otis Thompson who defendants expected to call as witnesses. Defendants do not, however, state how the absence of these individuals will adversely affect their defense. Thus, the absence of these witnesses alone does not amount to a showing of actual prejudice.

The thrust of defendants' assertion of prejudice, instead, stems from the likelihood of misidentification by government witnesses. Apparently, counsel for the government informed defense counsel that the prosecution witnesses in this case have honestly stated that they do not believe they can remember defendants well enough to make an accurate identification in court. These witnesses are law enforcement officers who have continued to work as such for the last twelve years, presumably contacting hundreds if not thousands of other defendants in that interval. The prospective witnesses have not observed the individuals who allegedly sold them cocaine since 1975, and no surveillance photos appear to exist to refresh their recollection.

The Supreme Court in *Barker v. Wingo* noted that prejudice can result if defense witnesses are unable to recall accurately events of the distant past and that loss of memory is not always reflected in the record because what has been forgotten can rarely be shown. *Barker v. Wingo,* 407 U.S. at 532, 92 S.Ct. at 2192. This

concept has been extended to memory lapses by prosecution witnesses where the memory loss is egregious and the defendant is convicted on failing memories. *Isaac v. Perrin*, 659 F.2d 279 (1st Cir.1981) *citing Dufield v. Perrin*, 470 F.Supp. 687, 692 (D.N.H.1979). In the instant case, government witnesses have expressed an honest belief that they will be unable to make an accurate identification of the defendants. The testimony of these witnesses is essential to the government's case since defendants were not arrested at the time of the alleged delivery of the narcotics to the undercover officers. To link the defendants to the substance delivered to the officers, the witnesses must be able to identify defendants as the individuals who sold them the cocaine.

Generally, the mere possibility that memories may dim, by itself, is not sufficient to demonstrate prejudice. *United States v. Rogers*, 639 F.2d 438, 441 (8th Cir.1981). However, such is not the situation in the present case. Here, a substantial possibility exists defendants may be convicted on the failing memories of government witnesses who have expressed serious reservations concerning their ability to identify defendants as those individuals who sold them cocaine. This court is simply unable to discount the substantial possibility of misidentification of defendants at trial as a speculative form of prejudice. Although this factor is not accorded overwhelming weight by this court, the fact remains that defendants have made a showing that prejudice to their defense has resulted from the twelve years of post-indictment delay.

█ Weighing the nature and length of delay together with the prejudice resulting from the delay, this court is compelled to grant defendants' motion to dismiss the indictment. While none of the three relevant factors standing alone is sufficient to compel the conclusion that defendants' Sixth Amendment rights have been violated, the combination of twelve years of post-indictment delay stemming exclusively from governmental neglect and the substantial likelihood of misidentification by government witnesses mandates a differ-ent result. Thus, this court concludes that under the *Barker v. Wingo* balancing test, defendants have been deprived of their Sixth Amendment right to a speedy trial and orders that the indictment be dismissed with prejudice.

### III. CONCLUSION

For the foregoing reasons, defendants' motion to dismiss the indictment with prejudice is granted.

IT IS SO ORDERED.