UNITED STATES of America

v.

George VEILLETTE, Defendant.

Crim. No. 87–00025–B.

United States District Court, D. Maine.

June 22, 1988.

**778**

Jay P. McCloskey, Asst. U.S. Atty., Bangor, for U.S.

James Hunt, Portland, Me., for Veillette.

## MEMORANDUM AND ORDER

CYR, Chief Judge.

Defendant is charged in a two-count indictment with possession, with intent to distribute, cocaine (Count I), and with failure to appear (Count II). Defendant objects to the United States Magistrate's recommended denial of defendant's motion to dismiss the indictment. Pursuant to 28 U.S.C. § 636(b)(1), the court undertakes *de novo* review of the Magistrate's Recommended Disposition.

### I. *Background*

Defendant was originally charged with the cocaine distribution offense in an indictment which was returned on July 22, 1982 in Criminal Case No. 82–00018–B. In that earlier indictment, defendant also was charged with a marijuana conspiracy. The marijuana conspiracy charge was severed from the present cocaine charge. Proceedings on the cocaine charge were stayed pending resolution of a motion to suppress evidence relating to both the marijuana and the cocaine charges. Defendant was tried and convicted on the marijuana charge. Defendant requested and was granted a further stay of the proceedings relating to the cocaine charge, and he executed a Speedy Trial Act waiver pending final resolution of the suppression issue.

Defendant appealed his conviction on the marijuana charge and moved to continue trial on the cocaine charge pending the outcome of the appeal of the marijuana conviction, which appeal was predicated in part on the suppression issue. The court accordingly continued trial on the cocaine charge and ordered the period—from February 1, 1985, to the date of the issuance of the mandate by the First Circuit Court of Appeals—excluded from computation under the Speedy Trial Act.

On December 2, 1985, the First Circuit affirmed defendant's conviction on the marijuana charge, and defendant filed a petition for writ of certiorari. On defendant's motion, the court again continued trial on the cocaine charge and ordered the period—from December 26, 1985, to the date of final disposition of the petition for writ of certiorari—excluded from calculation under the Speedy Trial Act.

On May 19, 1986, the United States Supreme Court denied certiorari. But the United States Attorney for the District of Maine did not actually learn of that action until 217 days later, on December 22, 1986.

On January 5, 1987, defendant moved to dismiss the cocaine charge, *with* prejudice, under the Speedy Trial Act. The court held that the delay from May 19, 1986 to January 5, 1987 constituted a violation of the Speedy Trial Act, and, on March 5, 1987, after considering the factors prescribed by 18 U.S.C. § 3162(b), the court dismissed the cocaine charge, *without* prejudice. *See United States v. Veillette,* 654 F.Supp. 1260 (D.Me.1987).

On June 29, 1987, just six days prior to the running of the statute of limitations, *see* 18 U.S.C. § 3282, defendant again was indicted on the cocaine charge.

Count II of the pending indictment alleges that, on or about May 16, 1984, defendant failed to appear for sentencing on the marijuana conviction in Criminal No. 82–00018–B, in violation of 18 U.S.C. § 3150 (repealed and replaced by 18 U.S.C. § 3146, October 12, 1984). On April 26, 1984, prior to the time the defendant allegedly failed to appear before the court for sentencing as alleged in Count II, a bench warrant had issued charging the defendant with failing to meet with his probation officer on April 23 and April 26, 1984, as required by the terms of the order for his release pending sentencing on the marijuana charge. On December 4, 1984, defendant was arrested on the bench warrant. The indictment containing Count II (failure to appear) was returned on June 29, 1987.

## II. *Motion to Dismiss Count I*

Defendant asserts three grounds for dismissal of Count I (cocaine charge) of the present indictment, *with* prejudice. First, he contends that the delay in obtaining the present indictment violates due process. Next, he argues that the aggregate delay in bringing him to trial on the cocaine charge violates his sixth amendment right to speedy trial. Finally, he again argues that the original indictment (containing the cocaine charge in present Count I) should have been dismissed, *with* prejudice, under the Speedy Trial Act.

### A. *Fifth Amendment Due Process Claim*

■ The primary safeguard against preindictment delay is the statute of limitations. *United States v. Lovasco,* 431 U.S. 783, 789, 97 S.Ct. 2044, 2048, 52 L.Ed.2d 752 (1977). Where, as in this case, an indictment is filed within the limitation period, "the Due Process Clause has a limited role to play against oppressive delay." *Lovasco,* 431 U.S. at 789, 97 S.Ct. at 2048; *see also United States v. Marion,* 404 U.S. 307, 324, 92 S.Ct. 455, 465, 30 L.Ed.2d 468 (1971). "To prove that a delay violated ... 'fundamental conceptions of justice' a defendant must prove that (1) pre-indictment delay caused substantial prejudice to his right to a fair trial and (2) the Government intentionally delayed indictment to gain a tactical advantage over the accused." *United States v. Picciandra,* 788 F.2d 39, 42 (1st Cir.) (citing *Marion,* 404 U.S. at 324–25, 92 S.Ct. at 465–66), *cert. denied,* 479 U.S. 847, 107 S.Ct. 166, 93 L.Ed.2d 104 (1986); *see also United States v. Lebron-Gonzalez,* 816 F.2d 823, 831 (1st Cir.), *cert. denied,* — U.S. —, 108 S.Ct. 135, 98 L.Ed.2d 92 (1987).

Defendant contends that he has suffered actual prejudice as a result of preindictment delay. First, he notes the very extended nature of the delay.[1] Next, defendant argues that the extended preindictment delay has resulted in the unavailability of two witnesses—one by death and one who allegedly cannot be located—who would have provided "strongly exculpatory" evidence.[2]

■ As to the first contention, the Supreme Court has made clear that a lengthy

---

**1.** Defendant is correct that the aggregate delay in indicting him has been great. Relevant Supreme Court cases involved substantially lesser delays of three years, *see Marion,* 404 U.S. at 308, 92 S.Ct. at 457, and 18 months, *see Lovasco,* 431 U.S. at 784, 97 S.Ct. at 2046. Indeed, the aggregate delay in this case extended to within six days of the expiration of the five-year period of limitations. *See* 18 U.S.C. § 3282. Of course, expiration of the limitation period would give rise to an irrebuttable presumption of prejudice to defendant's right of fair trial. *See Marion,* 404 U.S. at 322, 92 S.Ct. at 464.

The slight (six-day) discrepancy between the five-year limitation period and the delay involved here may appear so insignificant as to require dismissal. *But see Marion,* 404 U.S. at 322, 92 S.Ct. at 464. However, it is for the Congress to prescribe periods of limitations.

And it is for the court to apply the applicable statute of limitations, as written. The precedents of the Supreme Court and the First Circuit, on the other hand, prescribe the criteria the court is to apply in its consideration of defendant's constitutional claims.

**2.** Specifically, defendant asserts that Fernando Lopez, who was murdered "on Super Bowl Sunday in 1985 or 1986," *see* Objections to Magistrate's Recommended Disposition of Defendant's Motion to Dismiss Count I with Prejudice (Apr. 28, 1988), and George Valdes, who allegedly is unavailable, would testify that one Walter Wendelkowsky owned and possessed the cocaine involved in Count I, casting doubt on whether defendant possessed the cocaine as charged in Count I.

delay is insufficient alone to establish prejudice from preindictment delay, unless the limitation period has expired. *See Marion*, 404 U.S. at 322, 92 S.Ct. at 464. Thus, the defendant must show that any witnesses, who were critical to his defense,[3] became unavailable during a period of delay *attributable to the Government. See United States v. Marler*, 583 F.Supp. 1456, 1459 (D.Mass.1984), *aff'd*, 756 F.2d 206 (1st Cir. 1985). The only period of delay in any way attributable to the Government occurred between the denial of the writ of certiorari on May 19, 1986, and defendant's reindictment on June 29, 1987. Whether Fernando Lopez was murdered on Super Bowl Sunday 1985, or 1986, it is clear that his death predated any period of delay attributable to the Government. And the court agrees with the Magistrate that the defendant has made no sufficient showing that the other defense witness (Valdes) cannot be located for trial.[4] Absent a more convincing showing of unsuccessful efforts to locate Valdes, the court cannot find that Valdes is unavailable.

"[P]roof of prejudice is generally a necessary but not sufficient element of a due process claim [of unconstitutional preindictment delay]." *Lovasco*, 431 U.S. at 790, 97 S.Ct. at 2048-49. Because the court finds that defendant has failed to show actual prejudice, the court need not consider whether the Government intentionally delayed indictment to gain a tactical advantage over the defendant. Should defendant at trial succeed in showing actual prejudice

attributable to the Government, reconsideration of defendant's due process claim may be in order. *See Marion*, 404 U.S. at 326, 92 S.Ct. at 466.

**B. *Sixth Amendment Speedy Trial Claim***

Defendant argues that his sixth amendment right to speedy trial was violated in connection with the cocaine charge under both the original indictment and the pending indictment. The Magistrate concluded that defendant had waived any sixth amendment speedy trial claim with respect to any period of delay prior to June 29, 1987, by failing to assert a sixth amendment claim in the motion to dismiss the original indictment. The court finds that the defendant primarily relied on an asserted violation of the Speedy Trial Act in moving to dismiss the cocaine charge under the original indictment. Nevertheless, the motion to dismiss the original indictment expressly (though cryptically) stated a sixth amendment speedy trial claim, *see United States v. Veillette*, Criminal No. 82-00018-B, Motion to Dismiss (D.Me. Jan. 5, 1987) ("Defendant states that such indictment violates his right to a speedy trial as guaranteed to him by the United States Constitution, and as codified in the Speedy Trial Act...."), though it was neither argued nor pressed.[5] Accordingly, the court considers defendant's sixth amendment speedy trial claim as it relates to the cocaine charge under both indictments.[6]

3. Assuming that George Valdes would testify as asserted, *see* note 2 *supra*, it is far from clear that he could be considered critical to defendant's case. The evidence at the suppression hearing in Criminal Case No. 82-00018-B indicated that the cocaine was discovered on defendant's business premises.

4. Valdes is said to be unavailable on the basis of a single phone call to Valdes' attorney, who claimed not to have seen Valdes for some time and not to know Valdes' current address. There is no indication of any other effort to locate Valdes.

5. At the hearing on the present motion to dismiss, defense counsel explained that his office had been laboring under the belief that any sixth amendment speedy trial claim was subsumed in the Speedy Trial Act claim.

6. Under normal circumstances, the court would consider only the period of delay after June 29, 1987 in evaluating defendant's sixth amendment speedy trial claim. *See United States v. Hernandez*, 724 F.2d 904, 906 (11th Cir.1984) (on challenge to reindictment, court would not consider delay dating back to original indictment under sixth amendment); *United States v. LaTender*, 464 F.Supp. 607, 609 (E.D.Wis.1979) (same). The court does otherwise in this instance only because defendant's sixth amendment speedy trial claim was never addressed in the order dismissing the original indictment. Moreover, any further delay caused by uncertainty as to waiver of the earlier sixth amendment claim may be avoided by considering the merits of that claim now.

■ The Supreme Court identifies four criteria for determining a sixth amendment speedy trial claim: (1) the length of the delay; (2) the reason for the delay; (3) the manner and timing of defendant's assertion of his right to speedy trial; and (4) any prejudice to the defendant. *Barker v. Wingo*, 407 U.S. 514, 530, 92 S.Ct. 2182, 2192, 33 L.Ed.2d 101 (1972). *See also United States v. Johnson*, 579 F.2d 122, 123 (1st Cir.1978).

■ "The length of delay is to some extent a triggering mechanism. Until there is some delay which is presumptively prejudicial, there is no necessity for inquiry into the other factors that go into the balance." *Barker*, 407 U.S. at 530, 92 S.Ct. at 2192. Even though the cocaine charge is a serious and complex one (especially considering the numerous suppression issues previously ruled upon) for which a relatively extended delay may have been warranted, the great delay in bringing the defendant to trial on the cocaine charge clearly warrants consideration of the remaining criteria in *Barker*. *Cf. United States v. Johnson*, 579 F.2d at 123 (eight-month delay between arraignment and trial warranted further inquiry).[7]

Closely related to length of delay is the reason the government assigns to justify the delay. Here, too, different weights should be assigned to different reasons. A deliberate attempt to delay the trial in order to hamper the defense should be weighted heavily against the government. A more neutral reason such as negligence or overcrowded courts should be weighted less heavily but nevertheless should be considered since the ultimate responsibility for such circumstances must rest with the government rather than with the defendant. Finally, a valid reason, such as a missing witness, should serve to justify appropriate delay.

*Barker*, 407 U.S. at 531, 92 S.Ct. at 2192 (footnote omitted).

■ The court has discussed the reasons for the delay in bringing the defendant to trial on the cocaine charge under the original indictment. *See United States v. Veillette*, 654 F.Supp. at 1264–65. The 291–day delay between the denial of the writ of certiorari and the dismissal of the original indictment was the result of ministerial oversight, *see United States v. Veillette*, 654 F.Supp. at 1264, which must weigh against the Government, though not heavily.[8] *See Barker*, 407 U.S. at 531, 92 S.Ct. at 2192; *Johnson*, 579 F.2d at 124. As the court noted, however, the far more substantial portion of the delay is directly attributable to the defendant.

Defendant requested the continuances which gave rise to the excludable delays pending denial of the certiorari petition. Defendant does not allege that he did not have notice of the denial of the petition, and the court presumes that defense counsel, as counsel of record, was notified of the decision, particularly since it appears that the Solicitor General, the other counsel of record, did receive notice. Nevertheless, defense counsel took no steps to notify either the court or the Government of the occurrence of the event which would restart the speedy

---

7. The court notes that the delay between the dismissal of the original indictment on March 5, 1987, and defendant's reindictment on June 29, 1987, is not cognizable under the sixth amendment. *See Marion*, 404 U.S. at 313, 92 S.Ct. at 459; *United States v. Samples*, 713 F.2d 298, 301 (7th Cir.1983) (citing *United States v. MacDonald*, 456 U.S. 1, 102 S.Ct. 1497, 71 L.Ed.2d 696 (1982)).

8. This is because the United States Attorney for the District of Maine has represented that his office was never notified of the denial of certiorari. Since the court assumes that the Solicitor General received actual notice, the court imputes that knowledge to the United States Attorney for the District of Maine. *See United States v. Kattar*, 840 F.2d 118, 127 (1st Cir.1988) ("The Justice Department's various offices ordinarily should be treated as an entity, the left hand of which is presumed to know what the right hand is doing"). But the court cannot find that the Government intentionally delayed trial in this case for tactical or other advantage. Indeed, such intentional delay would have been foolhardy, as it would have been more likely to provide the defendant with a tactical advantage, viz, the means of obtaining dismissal on the speedy trial ground. Moreover, no tactical advantage to the Government has been shown to have resulted during this period of delay.

trial clock in accordance with the earlier order of the court.

654 F.Supp. at 1264. The delay resulting from the severance of the charges in the original indictment and defendant's appeal of his marijuana conviction are likewise directly and exclusively attributable to the defendant. Finally, the court notes that none of the delay after June 29, 1987 is attributable to the Government, nor does the defendant contend otherwise. In sum, the reasons for the delay do not provide persuasive support for defendant's sixth amendment claim.

> The responsibility of a defendant to assert his Sixth Amendment right is important to consider because it indicates whether prejudice, "which is not always readily identifiable", was actually caused to the defendant by the delay. *Barker, supra,* 407 U.S. at 531, 92 S.Ct. at 2192. A nonassertion of this right prior to trial indicates that the defendant may in fact have believed that the delay was to his benefit, in which case he should not be heard to complain at a later date that his right to a speedy trial has been violated. *Id.* at 521, 528–29, 531–32, 92 S.Ct. 2182 [2187, 2191, 2192–93].

*Johnson,* 579 F.2d at 124.

The court attaches considerable significance to the defendant's failure to assert his speedy trial claim sooner than he did following the Supreme Court's denial of his petition for writ of certiorari, especially since dismissal under the Speedy Trial Act would have been *required* upon expiration of the statutory 70–day time limit. Thus, the third criterion in the *Barker* analysis weighs decidedly against defendant.

As regards prejudice to the defendant, the Supreme Court identifies three interests which the right of speedy trial was intended to protect: "(i) to prevent oppressive pretrial incarceration; (ii) to minimize anxiety and concern of the accused; and (iii) to limit the possibility that the defense will be impaired." *Barker,* 407 U.S. at 532, 92 S.Ct. at 2193. Of these three interests, "the most serious is the last, because the inability of a defendant adequately to pre-

pare his case skews the fairness of the entire system." *Id.*

For the reasons stated in the discussion of defendant's due process claim, *see* text at pp. 779–80 *supra,* any prejudice to the defendant was minimal, at least any prejudice attributable to the Government. As for any additional anxiety and concern caused defendant by delay attributable to the Government, the facts that the defendant was then serving a 14–year prison term on the marijuana conviction, and that he then faced the prospect of being prosecuted for failure to appear for sentencing, strongly suggest that the delay of trial on the cocaine charge "probably 'created relatively little incremental strain on his life,'" *Johnson,* 579 F.2d at 125 (quoting *United States v. Palmer,* 537 F.2d 1287, 1289 (5th Cir.1976)).

Finally, the court finds that no oppressive pretrial incarceration resulted from any delay of trial on the cocaine charge since defendant was either at large, a fugitive, or serving a sentence of imprisonment, during such period of delay.

The court concludes on balance that the defendant's sixth amendment speedy trial claim fails with respect to all delay associated with the original indictment, upon which defendant primarily relies for his sixth amendment challenge, and with respect to any delay associated with the pending indictment, in relation to which defendant presses no serious sixth amendment speedy trial claim.

## C. *Speedy Trial Act Claim*

The gist of defendant's claim under the Speedy Trial Act is that his reindictment was impermissible because the original indictment should have been dismissed *with,* rather than without, *prejudice.* Defendant does not contend that the pending indictment should be dismissed for any Speedy Trial Act violation occurring since the return of the present indictment on June 29, 1987.

Accordingly, for the reasons relied upon in the ruling on defendant's motion to dismiss Criminal No. 82–00018–B, *see United States v. Veillette,* 654 F.Supp. 1260 (D.Me.

1987), the Speedy Trial Act claim must fail.[9]

### III. *Motion to Dismiss Count II*

 The sole basis for the motion to dismiss Count II (failure to appear) for untimeliness is that the defendant's arrest on December 4, 1984, pursuant to the April 26, 1984 bench warrant, triggered the 30-day limitation period under 18 U.S.C. § 3161(b)[10] within which the Government was permitted to indict defendant for failure to appear.

The obvious flaw in defendant's argument is that the April 26, 1984 bench warrant expressly authorized defendant's arrest for *failure to meet with the probation officer as he was required to do on that date and on April 23, 1984*, which was one of the conditions of defendant's release pending sentencing. Count II, on the other hand, alleges that the defendant failed to appear before the court on May 16, 1984, for *sentencing* on his marijuana conviction. Clearly, defendant was arrested on the bench warrant for failure to appear before his probation officer, not in connection with his later failure to appear before the court for sentencing on the marijuana conviction.

Even if the bench warrant and Count II did relate to the same conduct, defendant's contention would run afoul of *United States v. Ray*, 768 F.2d 991 (8th Cir.1985), upon which the Magistrate relied. The defendant in *Ray* had been released on bond after his initial arrest and was rearrested for failing to appear at his arraignment. More than five months after his second arrest, Ray was charged with failure to appear. In rejecting the defendant's claim that subsection 3161(b) required dismissal of the indictment, the court held that the second arrest was for forfeiture of bond, rather than for failure to appear. *See id.* at 995.

Defendant Veillette was arrested on a bench warrant for violating a condition of his release pending sentencing, not for the crime of failure to appear before the court (*see* Count II). Therefore, much like the forfeiture of bond in *Ray*, Veillette's arrest on December 4, 1984 flowed from his failure to abide by a condition of his release.

For the foregoing reasons, the court ACCEPTS the Magistrate's Recommended Disposition on defendant's motion to dismiss counts I and II, and the motion is DENIED.

SO ORDERED.

---

9. The court recognizes that its order dismissing the original indictment, *without* prejudice, was not appealable. *See Parr v. United States*, 351 U.S. 513, 76 S.Ct. 912, 100 L.Ed. 1377 (1956); *United States v. Bratcher*, 833 F.2d 69 (6th Cir. 1987), *cert. denied,* — U.S. —, 108 S.Ct. 760, 98 L.Ed.2d 772 (1988).

10. Subsection 3161(b) reads:
   Any information or indictment charging an individual with the commission of an offense shall be filed within thirty days from the date on which such individual was arrested or served with a summons in connection with such charges. If an individual has been charged with a felony in a district in which no grand jury has been in session during such thirty-day period, the period of time for filing of the indictment shall be extended an additional thirty days.
   18 U.S.C. § 3161(b).